1  Jason Christ, Pro Se
   PO Box 8282
2  Missoula, MT 59807
   (602) 481-3895
3  jason@mtmj.org

4  Plaintiff

**RECEIVED**

**JUN 20 2012**

CLERK, U.S. DISTRICT COURT
DISTRICT OF MONTANA
MISSOULA

5

6

7              UNITED STATES DISTRICT COURT

8                  MISSOULA, MONTANA

9              MISSOULA COUNTY DIVISION

| | |
|---|---|
| 10  Jason Christ, Pro Se, | ) |
| | ) Case No.: _____ |
| 11         Plaintiff. | ) |
| | ) Department: _____ |
| 12     vs. | ) |
| | ) PLAINTIFF'S APPLICATION FOR |
| 13  City of Missoula Police | ) TEMPORARY RESTRAINING |
| | ) ORDER, PRELIMINARY AND |
| 14  Department, Colin Rose, | ) PERMANENT INJUNCTION, AND |
| | ) ORIGINAL VERIFIED COMPLAINT |
| 15  Stacy Lear, Missoula County) FOR DAMAGES |
| | ) |
| 16  Attorneys Office, Andrew | ) |
| | ) |
| 17  Paul, Paul Van Valkenberg, | ) |
| | ) |
| 18  Missoula County 911, | ) |
| | ) |
| 19  Officers John Does 1-12; | ) |
| | ) |
| 20         Defendants | ) |
| | ) |

21

VERIFIED COMPLAINT and DEMAND FOR JURY TRIAL - 1

1

2    COMES NOW, Jason Christ, pro se, and files this
3   complaint against the defendants listed above and would
4   show the court as follows:

5

6                         THE PARTIES

7   1. Plaintiff, Jason Christ, is a resident of Missoula
8      County and had a business in Missoula with it's
9      primary place of business in Missoula.

10  2. Defendant, City of Missoula Police Department, is
11     located in and it's primary location for business
12     is in Missoula County, Montana.

13  3. Defendant Colin Rose is a resident of Missoula
14     County.

15  4. Defendant Stacy Lear is a resident of Missoula
16     County.

17  5. Defendant, Missoula County Attorney's Office, is
18     located in and it's primary location for business
19     is in Missoula County, Montana.

20  6. Defendant, Andrew Paul, is a resident of Missoula
21     County.

1  7. Defendant, Paul Van Valkenberg, is a resident of
2     Missoula County.

3  8. Defendants Officers 1-12 are various Missoula City
4     Police   and   Missoula   County   Law   Enforcement
5     employees.

6

7                  JURISDICTION AND VENUE

8  9. Subject matter jurisdiction over this cause is
9     conferred upon and vested in this court under the
10    laws of the United States.

11 10.   Personal Jurisdiction over the Defendants is
12    vest in this Court under the laws of the United
13    States.

14 11.   All relevant conduct between the plaintiff and
15    the defendants occurred in the United States in
16    general, venue is proper in this court.

17

18              INTRADISTRICT ASSIGNMENT

19 12.   This cause of action should be assigned to the
20    Missoula County Division of this Court because a
21    substantial part of the events or omissions which

   VERIFIED COMPLAINT and DEMAND FOR JURY TRIAL - 3

1    gives rise to this lawsuit occurred in Missoula
2    County.

3

4                          INTRODUCTION

5    13.   In 2003, the citizens of Montana passed, by
6          voter initiative, the legalization of marijuana,
7          for medical use. It passed by 63% in 2003, and by
8          2009, 850 patients were signed up as patients with
9          the Montana department of public health and human
10         services. ("DPHHS")

11   14.   Plaintiff began his business in 2009, in which
12         he provided a doctor to patients, organized classes
13         about the law and medical cannabis and participated
14         in the political arena with lobbying efforts.

15   15.   By 2010, plaintiff's business had served over
16         15,000 patients, Montana State Court experienced
17         it's first jury nullification/mutiny with regards
18         to criminal marijuana possession, causing the
19         proseuction to lose cases.

20   16.   In early 2010, plaintiff challenged the
21         validity of an ordinance that was put into effect

1    by an anti-medical marijuana city attorney, Jim

2    Nugent. This "law" was never passed by any due

3    process of passing laws. In other words, Nugent, in

4    his official capacity, prohibited patients and

5    caregivers from lawfully growing their own marijana

6    within Missoula County. No law existed to this

7    effect and plaintiff filmed Nugent's verbal attempt

8    to excuse his mistake. It was put on the internet

9    and the "law" was redacted.

10   17.   This kind of action by cities occurred on a

11   state-wide scale, as municipalities chose to enact

12   practices with the same weight and effect as laws

13   that prohibited patients from being able to access

14   and use medical marijuana, lawfully under state

15   law. Part of plaintiff's business during outreach

16   seminars, included educating the public about these

17   unlawful practices and how government is supposed

18   to operate and how to participate.

19   18.   Law enforcement provided misinformation and

20   heavy lobbying efforts in 2010 and 2011 to

21   eliminate the medical marijuana act. As a result,

1   in 2010 the Montana Legislature passed a repeal

2   bill, the governor vetoed the legislature's bill,

3   and the legislature enacted a new medical marijuana

4   act that eliminated 75% of registered patients, 98%

5   of the business involved and frightened all but two

6   doctors from exercising their free speech rights –

7   to counsel freely a patient, without fear of the

8   government's intrusion.

9   19.  But the results were clear: patients were

10   getting off of the many dangerous narcotic pills

11   that had been causing physical ailments which

12   affected the overall economy, in part, due to the

13   use of medical cannabis.

14

15                              FACTS

16   20.  Beginning in 2009, the Defendants named above

17   initiated a stream of actions that led to this case

18   being filed.  This included the denial of

19   plaintiff's rights without due process, denial of

20   equal protection under the law and malicious

21

1      prosecution of criminal charges that were/are

2      frivilous and arbitrarily enforced.

3    21. The defendants instituted a frivilious charges

4      against the plaintiff - misdemeanors and felonies,

5      some based on a single phone call where the

6      plaintiff used the word "fuck". These calls were

7      charged against the plaintiff in various forms,

8      including an alleged bomb threat.

9    22. In the alleged bomb threat case, the plaintiff

10    was not in the jurisdiction of the trial court when

11    the offense was alleged to have occurred, in

12    violation of the Montana State Constitution,

13    Article II, §24. Missoula county does not have

14    jurisdiction, yet the defendants have continued to

15    press charges against the plaintiff. The trial

16    court has refused to dismiss the case, proceeding

17    under mistake of law, and the plaintiff has

18    appealed for writ of supervisory control, and has

19    been denied multiple times.

20    23. The plaintiff, the defendant in that underlying

21      case, interviewed the prosecution witnesses,

VERIFIED COMPLAINT and DEMAND FOR JURY TRIAL - 7

1    examined under oath. The investigating officers

2    interviewed the prosecution witnesses. In the

3    underlying case, the prosecution is aware that the

4    testimony that will be given by the witness will be

5    purjured, and the trial court has been made aware

6    of the same – yet the case is continuing to

7    proceed. The only way that the prosecution can with

8    its case, is if witnesses lie. Indeed all of the

9    allegations by the prosecution have already been

10   controverted several times by the plaintiff.

11   24.   The defendants are proceeding in that criminal

12      case knowing that the witness will have to continue

13      to commit perjury.

14   25.   The intended use of the justice system by the

15      defendants has been perverted in a design for

16      prosecution of non-crimes, such as complaining over

17      the phone, to police, to customer service

18      representatives, etc. While the underlying reason

19      for the defendant's prosecution of the criminal

20      cases are in retaliation for plaintiff's political

21      involvement and exercise of free speech.

VERIFIED COMPLAINT and DEMAND FOR JURY TRIAL - 8

26. Every other criminal case in the same district where the charges are the same (felony intimidation), has so much more of a story of outrageous behavior, that, as one lawyer said it, "are you serious?". The case against the plaintiff by the defendant in these multiple criminal cases are wholly unfounded, no proof exists, the witnesses testimony has been perjured several times, and they have been brought, solely for the purpose to intimidate, harrass and annoy the plaintiff – to remove his ability to participate in the political arena, to have a business that hires doctors who counsel patients to use marijuana. The actions are designed to also stop his ability to conduct seminars throughout Montana - educating people about their rights, beyond medical cannabis.

27. For over three years, the defendants have engaged in denying equal protection to the plaintiff, in various forms and levels.

VERIFIED COMPLAINT and DEMAND FOR JURY TRIAL - 9

1   28.   When the plaintiff contacted the defendants for

2       police protection due to a theft at his residence

3       in 2010, for several thefts and assaults in 2011,

4       and thefts, assault, battery and police misconduct

5       in 2012, the defendants did not respond properly.

6   29.   Instead, the defendants 1) ignored the

7       plaintiff's requests, 2) declined to prosecute 100%

8       of every complaint, 3) threatened the plaintiff

9       with arrest if he continued to complain about the

10      complete lack of equal police protection, and 4)

11      filed criminal charge after criminal charge against

12      the plaintiff - for using the word "fuck" over the

13      phone.[1]

14  30.   Plaintiff has been forced to file civil actions

15      against those who have harmed him, rather than

16

17  [1] The context of which was, "what the fuck?", or "this is fucking shitty", as

18  opposed to an insult such as "f**k you!" The allegations of every criminal

19  charge are the same - they don't allege insults, they are charges solely

    based on the use of the word "fuck", or another similar word like it. And

20  neither a stream of them - a single act forms the basis of multiple felonys

21  and misdemeanor charges against the plaintiff.

VERIFIED COMPLAINT and DEMAND FOR JURY TRIAL - 10

1    prosecution being a part of the right of the
2    plaintiff to police protection. After all, it is
3    the tax-payers – the citizens, who pay for police,
4    and it is their duty to provide those services,
5    equally to all.

6    31.   So the Court, because of the many pleadings
7    filed by the plaintiff, has labeled the plaintiff a
8    difficult litigant and "hard to deal with." Which,
9    if true, would not be agreed upon by the clerks of
10   that same court – those who do the actual "dealing"
11   with the plaintiff.

12

13   32.   In early 2012, as a result of the ongoing
14   harrassment by the police and their affirmative
15   actions to deprive the plaintiff from equal
16   protection, the plaintiff was forced to leave
17   Missoula county.

18   33.   Plaintiff moved out of his home. Over a course
19   of several evenings, after many thefts had already
20   occurred, and no police protection or prosecution,
21   plaintiff called the police because at night

VERIFIED COMPLAINT and DEMAND FOR JURY TRIAL - 11

1  someone was pointing a red laser into his kitchen,

2  living room and dining room. This occurred for

3  several weeks, the police did not investigate, but

4  they wrote a "silly" report, designed to make the

5  plaintiff look bad so that they would not take him

6  serious.

7  34. Within two weeks, plaintiff's car windows and

8  tires were shot out, items were stolen, and other

9  things occurred that caused plaintiff to fear for

10  this life.

11  35. The police refused to investigate any

12  allegations by the plaintiff, dismissing every call

13  to 911 as frivolous.

14  36. The plaintiff moved from his home and did not

15  notify the lower trial courts in the criminal cases

16  because the defendants would use that against him

17  to lock him in jail, not because plaintiff was

18  violating any court orders or state laws, but

19  because that's how things are done in Missoula

20  County District State Court.

21

1    37.   Plaintiff moved out, to camp in the woods.

2    38.   Plaintiff was camping near Lolo Hot Springs,

3        about 20 miles into Mineral county, down a vast

4        network of random unimproved dirt roads, near the

5        end of one of them, in the middle of nowhere.

6    39.   On May 2nd, 2012, the plaintiff was supposed to

7        interview a prosecution witness at 9AM.

8    40.   Plaintiff did not appear to interview her

9        because he thought it was scheduled for two days

10       later and indeed had set it as such in his

11       calendar.

12   41.   One of many strangest and most frightening

13       interactions with law enforcement occurred.

14   42.   At 5PM on that day, Missoula County sheriff's

15       deputys, without warrant or permission, entered

16       Mineral county, and went directly to plaintiff's

17       vehicle, in which he was sitting, working on a

18       legal paper.

19   43.   The plaintiff heard a knock on his window, he

20       looked out of his car, saw guns pointed at him and

21       was instantly frightened.

VERIFIED COMPLAINT and DEMAND FOR JURY TRIAL - 13

1    44.   The deputies had their guns drawn and pointed

2         at the plaintiff as they made the plaintiff exit

3         his car, talk to them. They requested his

4         identification, and while he was retrieving it from

5         his car, another officer pointed his gun at the

6         plaintiff.

7    45.   When plaintiff was asked why he was there, he

8         responeded that he liked camping, was working on

9         some "legal stuff", and had a US field guide army

10        manual.

11   46.   The plaintiff asked if he had done something

12        wrong (to find out why they were there) and the

13        deputies responded that someone had called about a

14        person camping. This call, somehow prompted the

15        Missoula county sheriff's department to cross

16        county lines, point their guns at plaintiff, and

17        harass him about his personal business.

18

19

20

21

47.   There exists no laws for the actions taken by the defendants, and there are no laws prohibiting what the plaintiff was doing - camping.[2]

48.   There was no probable cause or court order for the intrusion on plaintiff's peace and quiet.

49.   In May and June of 2012, the defendants threatened the plaintiff with arrest and prosecution for asserting his request to speak with a supervisor regarding why the plaintiff was denied equal protection when assaulted. The plaintiff had caught the incident on camera, and was threated by the police with criminal prosecution if he complained to supervisors.

50.   The plaintiff was charged with violating the Privacy in Communcations Act (45-8-213, MCA) for questioning why the desk officer did not forwarded plaintiff's many requests to speak with a

---

[2] Incidently, plaintiff is vegan (vegetarian) and does not hunt, does not own any weapons, but is not allowed to have any, to protect himself in the woods - from bears and such.

1  supervisor. There was no probable cause for the

2  charges against the plaintiff and the defendants

3  intentionally did not record the phone call, and,

4  most importantly, the plaintiff was charged with a

5  crime for using the word "fuck" over the phone.[3]

6  51.   The defendants attempted to subvert justice,

7  attempting to acquire a warrant for plaintiff's

8  arrest, without due process of law.

9  52.   The defendants sent a copy of a ticket to the

10  plaintiff's P.O. Box, unregistered. They did not

11  attempt any kind of proper service. Defendants

12  charged plaintiff with the crime of using the "f"

13  word over the phone.

14

15  53.   The defendants have not investigated the leads

16  or information provided by the plaintiff in

17

18  _____

19  [3] Again, the context of which was, "what the fuck?", or "this is fucking

20  shitty", as opposed to an insult such as "f**k you!" Regardless, it was to a

21  trained police officer, specially educated to tolerate such expressions of

dissatisfaction with the government's actions.

1  criminal charges, or in complaints made to the

2  police, such as when the plaintiff was assaulted.

3  54.   Instead, the defendants filed complaints

4  against the plaintiff. For over three years, the

5  defendants have continued improper proceedings

6  against the plaintiff. Some of the proceedings have

7  been dismissed, because there has been no probable

8  cause, or for improper venue, or because the

9  "victim's" testimony has been been found to be made

10  up.

11

12  55.   In the course of making false claims in

13  affidavits to magistrates, the defendants engaged

14  in a pattern of illegal searches and seizures of

15  the plaintiff, his person, places and effects.

16  56.   Defendants made an illegal search and seizure

17  of an unauthenticated recorded phone call,

18  allegedly the plaintiff, cussing out a customer

19  service representative.

20  57.   The plaintiff was charged with the crime of

21  cussing over the phone, by Information, outlining a

1    phone call, a bomb threat, and two (or three[4])

2    counts of felony intimidation.

3    58.   The plaintiff was another county at the time

4    the plaintiff was alleged to have committed the

5    crime of intimidation - based on an unrecorded,

6    alleged bomb threat.

7    59.   No jurisdiction in Missoula county was proper,

8    yet the defendants maintained an illegal action

9    against the plaintiff, the defendants sought and

10   seized "evidence" without warrants – while

11   similtaneously lawfully obtaining evidence from the

12   same party.

13   60.   The plaintiff was entitled to, and expected,

14   privacy of his persons, places and effects. Yet the

15   defendants ignored his rights and affirmatively

16   violated plaintiff's right to be secure in his

17   person, places and effects.

18

19   _____

[4] The State (prosecution) has been threatening to add more felony charges for

20   the same act of the plaintiff for two years, in retaliation for the

21   plaintiff's filing of motions in the underlying case.

61.  The defendants engaged in a series of defamatory actions that caused others to have a negative view of the plaintiff, causing the material denial of plaintiff's rights.

62.  The defamatory remarks were written, some by hand, some in email, and some verbally.

63.  The defendants contacted the news media just before several situations in which the plaintiff was searched, or arrested – the defendants used the media to embarrass the plaintiff.

64.  Those remarks were untrue, the defendants did not have a privilege to dissemenate that information.

65.  The Montana Fourth Judicial District Court has been presiding over a case for the last 2 years in which the plaintiff in the instant case has been charged with two (or three) counts of felony intimidation for complaining about his cell phone service.

66.  The State Court is proceeding under several mistakes of fact (stipulated by the prosecution)

1    and law that are clearly shown to be incorrect by

2    documented evidence in the form of database

3    records, but the lower State Court has proceeded

4    under a number of procedural errors that, if

5    allowed to continue, will deprive the plaintiff in

6    the instant case, the right to a fair trial.

7    67.  In the State criminal case against the

8        plaintiff, the Court has ordered the production of

9        evidence exculpatory and inculpatory in nature, for

10       the plaintiff's defense, yet it has refused to

11       enforce any of it's orders.

12   68.  Additionally, the State Court has not dismissed

13       the charges, even though the defendant was in

14       another county at the time of the alleged offense,

15       the State stipulates to this fact, and the US

16       Constitution states that the accused shall have

17       the right to a jury trial by his or her peers. In

18       the Montana Constitution, (Art. II, §24), the

19       accused shall have the right to a trial in the

20       county in which the offense is alleged to have

21       occurred.

VERIFIED COMPLAINT and DEMAND FOR JURY TRIAL - 20

1   69.   The State District Court has independently
2       sought and found case law that weakly supports the
3       State's position, in order to keep the case in
4       Missoula County, which is not the definition of
5       "impartial judge" and does not lead to a fair
6       trial.

7   70.   The State court has ordered that the plaintiff
8       gets only one lawyer – Katie Green, Esq., who is so
9       busy that in the last month, she has not had any
10      time to meet with the plaintiff and help with his
11      criminal charges. In fact, she was told by her
12      director, not to participate or help the plaintiff
13      as a defendant in the pending State criminal
14      charges against him.

15  71.   The State Court, being briefed on this issue,
16      has ignored the plaintiff's plea for legal
17      assistence. These criminal charges against him have
18      cost him his business, reputation, freedom, right
19      to medical help, ability to get a job or rent a
20      home and position in the medical industry.

21

72.   The Montana Supreme Court has refused the plaintiff's repeated requests for writs of supervisory control.

73.   The plaintiff has been frightened away from living in Missoula county, or in the surrounding counties, based on the stream of continuous harrassment from local law enforcement in Missoula city and county. It has affected his bodily functions.

74.   The defendants have refused to allow the plaintiff to make complaints through the administrative process of the Missoula Police Department.

75.   The governor of the State of Montana has refused to hear any complaints, and the attorney general for the State of Montana was a defendant in a case against the State, because the plaintiff sued the State for not allowing the plaintiff access to his medicine. The AG has never returned the plaintiff's calls.

1    76.   Due to the multiple criminal charges against
2        the plaintiff in the State criminal charge, the
3        plaintiff has been detained in Montana, unable to
4        travel, visit family, or manage his business
5        affairs. It has cost him relationships, both
6        business and personal and has cost him well over 7
7        million dollars in lost profits and costs. He
8        cannot respond to family emergencies.

9    77.   Plaintiff is detained in Montana, without being
10       convicted of any crimes, and without Constitutional
11       due process of law.

12   78.   Plaintiff has been denied many rights during
13       the pendency of the criminal charges against him.
14       He is not allowed to have alcohol, to own a weapon,
15       to use drugs, to travel, to enter bars, no contact
16       with Verizon and requred to hire an attorney. But
17       there has never been any hearing on a restraining
18       order, any hearing whatsoever to determine if the
19       denial of the plaintiff's rights are lawful, or
20       even necessary.

21

VERIFIED COMPLAINT and DEMAND FOR JURY TRIAL - 23

1    79.   The plaintiff has no criminal record, has

2          appeared at every hearing, and cannot get a cell

3          phone in Montana due to the denial of his rights.

4

5    80.   The Missoulian, a Montana state newspaper with

6          strong political ties, has defamed the plaintiff in

7          its' many front page stories about the plaintiff

8          and his criminal charges, has labelled the

9          plaintiff a "jerk" and the biggest grower of

10         marijuana in Montana. But the plaintiff never grew,

11         did not sell or distribute marijuana. The plaintiff

12         did not have any ties, financial or otherwise, with

13         caregivers - those who legally grew marijuana. The

14         plaintiff owned a medical clinic that provided

15         outreach seminars and arranged doctor-patient

16         visits.

17   81.   As a result of the newspaper's untrue

18         statements, statements that have not been verified,

19         the plaintiff has suffered law enforcement

20         retailiation everywhere in Montana - it is State-

21         wide.

VERIFIED COMPLAINT and DEMAND FOR JURY TRIAL - 24

82.   In May of 2012, the plaintiff was in Arlee, MT, and had pulled over to the side of the road in a sparsely populated area to use his computer. He was on the side of the road, parked legally, and no visible signs stated otherwise.

83.   A Montana law enforcement officer, came out of a residential house, wearing plain clothes, without a badge or gun, approached plaintiff's car windows and attempted to enter and search the plaintiff's vehicle.

84.   Plaintiff moved his vehicle down the street, and the officer went back into the house, put on a black vest and gun, got into an unmarked vehicle, and pulled behind the plaintiff's car, with police lights and siren blazing.

85.   The officer got out of his car, went up to the plaintiff's driver door, opened the door and pulled plaintiff from his car. Plaintiff attempted to put on his bag (it has a shoulder strap) and the officer said, "you won't need that where you're

1  going", and put handcuffs on him. The officer began

2  to search the plaintiff's person, bag and car.

3  86.  Plaintiff objected to the search and asked the

4  officer what he was doing and why. Officer

5  responded that he knew the plaintiff, and stated,

6  "so you like to be on the front cover of the

7  Missoulian, do ya?" The officer put the plaintiff

8  in the back of his unmarked police vehicle, and

9  began searching quicking and sporatically for

10  something. This caused plaintiff to fear that he

11  would be murdered because of what the officer said,

12  that the officer was looking for a potential

13  weapon, and that the officer did not follow any

14  kind of protocol commonly used by law enforcement.

15  87.  The officer did not display any show of

16  authority to arrest the plaintiff, nor did the

17  officer follow procedure; instead, the officer,

18  unlawfully detained the plaintiff, without probable

19  cause, made statements designed to terrify the

20  plaintiff and make him feel like he was going to be

21  killed.

VERIFIED COMPLAINT and DEMAND FOR JURY TRIAL - 26

88.   After 20 minutes, a supervising officer showed up and the first officer let the plaintiff go without mention of any crimes committed or why the plaintiff was detained in the first place.

89.   No charges were filed, the officer did not inquire as to the plaintiff's status, what he was doing, and was verbally and physically abusive with the plaintiff. The officer never told the plaintiff why he had arrested and detained him for 30 minutes, without probable cause for any crime.

90.   The officer did not ask for the plaintiff's driver's license.

91.   In 2010, after allegations by former employees alleging fraud by the plaintiff, the defendants engaged in a search and seizure, highly publicized, of plaintiff's business. As filmed and pictured in the local, state and national news, they took computers, contracts, bank information, tax paperwork, medical records, and 28,000 patient records, and more.

92.   The Missoula county detectives contacted and threatened plaintiff's doctors, patients, several caregivers and other affiliates.

93.   The detectives followed up with patients about their medical conditions and why the doctors had written certain things in the medical records.

94.   Then, the detectives cross referenced this information with the DPHHS in Helena, provided information to Federal DEA and FBI agents, which resulted in many of the raids and federal criminal charges against many law abiding citizens of Montana and the United States.

95.   The case in Missoula State District Court was opened so that the State would be able to acquire that which could otherwise never have been acquired: patient medical records and contacts of the plaintiff and his doctors and affiliates.

96.   The case was closed in Missoula State District Court, without any charges against the plaintiff.

97.   The plaintiff had to envoke court action to get the defendants to return his items but they did not

VERIFIED COMPLAINT and DEMAND FOR JURY TRIAL - 28

1   return all of the items. Some of the items were

2   destroyed or otherwise lost.

3

4   REQUEST FOR INJUNCTIVE RELIEF AND PROTECTIVE ORDER

5   98.    The actions by the defendants are not legal.

6   99.    The plaintiff needs protection from Missoula

7   county sheriff's, the city of Missoula police, and

8   law enforcement in the State of Montana, because

9   they are breaking the law, violating the US and

10  Montana Constitutions, and the State Courts are

11  denying the plaintiff due process and equal access

12  to the courts. They have dismissed cases, solely on

13  the basis of his pro se status in court.

14  100.   Between 2011 and 2012, a Missoula Court ordered

15  that the plaintiff be prohibited from access to the

16  only law library in Montana. (Actually, there is

17  one other, in Helena, about ¼ the size of the UM

18  Law Library.)

19  101.   For over two months, the plaintiff was denied

20  access to any legal resources whatsoever. The

21  decisions were appealed to the appellate court, and

1  all of the cases with all of the judges in all of

2  the State courts, denied the plaintiff's 14 motions

3  for stay of proceedings and denied his requests for

4  extensions and continuances.

5  102.  In 2012, the State Court dismissed civil

6  complaints against others, where the plaintiff was

7  pro se, solely because he was pro se. The judge in

8  that case told the plaintiff that he would have to

9  hire a lawyer if he wanted justice, barring

10  plaintiff's equal access to the courts, a US

11  Constitutional guarantee.

12  103.  In 2012, the judge in another case announced

13  that the Missoula Fourth Judicial District State

14  Court was having problems with the plaintiff

15  because he filed many pleadings. The court called

16  plaintiff a "difficult litigant", based solely on

17  the number of pleadings, not on the merits of those

18  papers.

19  104.  The plaintiff requests protection from Missoula

20  city and county public officials, including but not

21  limited to mayor, city attorney, county attorney,

1   city police and county sheriff from state police

2   from retaliation and revenge against the plaintiff

3   due to this complaint against the defendants.

4   105.  Their actions, if not halted, will cause

5   irreparable harm to the plaintiff.

6   106.  No remedy exists for the harm to the plaintiff

7   by the defendants.

8   107.  The plaintiff requests that this court issue a

9   protective order against the defendants to stop

10  them from harassing and any malicious prosecution

11  against the plaintiff.

12  108.  If the plaintiff uses "unclean" words over the

13  phone, he is charged with a crime by the State of

14  Montana, and this is unlawful because it is

15  directly against the freedom of speech.

16  109.  The defendants have filed another complaint in

17  a state court against the defendant, but the

18  prosecution has not begun. The compliant is based

19  on an unconstitutional law: 45-8-213, MCA, which

20  allows law enforcement the arbitrary ability to

21  arrest anyone for using the word "fuck" over the

VERIFIED COMPLAINT and DEMAND FOR JURY TRIAL - 31

1 phone, internet, email, or text message. The

2 statute states that use of a profane word using any

3 kind of electronic communication is evidence of a

4 defendant's intent to harrass, annoy, offend, etc.,

5 another person, which is a misdemeanor crime.

6 110. The plaintiff tried to make a formal complaint

7 to the police, about the police, and they did not

8 allow him to make a complaint. Plaintiff complained

9 about it, making the statement, "what the fuck?",

10 and as a result, was charged with violating 45-8-

11 213, MCA, a misdemeanor.

12 111. The defendants did not serve the plaintiff with

13 the ticket. It was mailed to him, unregistered to

14 his PO Box.

15

16 CLAIM I - ABUSE OF PROCESS

17 112. The defendants had an ulterior purpose for

18 using legal processes;

19 113. The defendants committed willful acts in the

20 use of processes;

21

VERIFIED COMPLAINT and DEMAND FOR JURY TRIAL - 32

1    114.   The   defendants'   willful   acts   misused   or

2        perverted the intended use of the process; and

3    115.   The  plaintiff  was  damaged  and  harmed  as  a

4        result of the defendants' actions.

5

6    CLAIM II - DENIAL OF EQUAL PROTECTION UNDER THE LAW

7    116.   The plaintiff was entitled to equal protection

8        under the law, from the defendants.

9    117.   The  plaintiff's  involvement  with  the  medical

10       marijuana program in Montana precluded and was the

11       cause of the class designation of the plaintiff by

12       the defendants.

13   118.   The defendants were obligated to provide equal

14       protection to the plaintiff.

15   119.   The  defendants  intentionally  and  maliciously

16       denied equal protection to the plaintiff.

17   120.   The  plaintiff  suffered  damages  as  a  direct

18       result of the defendants' actions.

19

20

21

VERIFIED COMPLAINT and DEMAND FOR JURY TRIAL - 33

1

### CLAIM III – MALICIOUS PROSECUTION

2   121.   The defendants instituted and continued many

3   judicial proceedings against the plaintiff.

4   122.   The proceedings were instigated and abetted by

5   defendants.

6   123.   The proceedings terminated favorably for the

7   plaintiff.

8   124.   The proceedings against the plaintiff lacked

9   probable cause.

10   125.   The defendants instituted the proceedings with

11   malice and reckless disregard for the truth.

12   126.   The actions by the defendants injured the

13   plaintiff.

14   127.   The actions by the defendants caused damage to

15   the plaintiff.

16

### CLAIM IV – INVASION OF PRIVACY

18   128.   The plaintiff had a right to the privacy of

19   plaintiff's person, places and effects, and to be

20   free from unreasonable searches and seizures

21   without a compelling state interest. However, the

VERIFIED COMPLAINT and DEMAND FOR JURY TRIAL - 34

1  defendants were unreasonable in their search and

2  seizure of the plaintiff's persons and effects,

3  because without a search warrant it was *per se*

4  unreasonable.

5  129. The defendants did not have a compelling State

6  interest, and the unlawfully seized "evidence" was

7  not going anywhere, it had been preserved by the

8  "victims", defendants were aware of the

9  preservation.

10  130. The access to the plaintiff's private

11  information was unlawful.

12  131. The plaintiff suffered harm as a result of the

13  defendants' invasion of privacy because the

14  transcript of that phone call was put into the

15  public charging documents accusing the plaintiff of

16  cussing out customer service.

17  132. The plaintiff suffered harm to his reputation

18  and right to an impartial trial by his peers

19  because of the massive publicity that the

20  transcript produced.

21

1

## CLAIM V - SLANDER

2   133. The defendants engaged in making statements

3       that were not true about the plaintiff to other

4       persons, in written form, in the charging documents

5       and other pleadings to the court, and in written

6       communication to the press, public and elected

7       officials, and departments entrusted in public

8       administration and order.

9   134. Others relied on that information.

10  135. The defendants knew or should have known that

11      the information was false.

12  136. The defendants accused the plaintiff of crimes,

13      falsely and without legal justification.

14  137. The information that the defendants provided to

15      others was false and the defendants did not have

16      any privilege to disseminate that information.

17  138. The plaintiff was damaged as a result of the

18      defendants' slander.

19

20

21

## CLAIM VI - LIBEL

139.   The defendants engaged in making statements that were not true about the plaintiff to other persons, verbally, including, but not limited to the media and other departments engaged in law enforcement and public administration.

140.   Others relied on that information.

141.   The defendants knew or should have known that the information was false.

142.   The information that the defendants provided to others was false and the defendants did not have any privilege to disseminate that information.

143.   The plaintiff was harmed as a result of the defendants' libel.


## CLAIM VII - NEGLIGENCE

144.   The defendants owed a duty to the plaintiff to investigate the plaintiff's assertions of assault and false testimony by witnesses and alleged victims.

1  145. The defendants owed a duty to the plaintiff to

2     dismiss the claims against the plaintiff when they

3     learned that the victim / witnesses were biased and

4     providing false information to the defendants in

5     order to get the plaintiff in trouble.

6  146. The defendants owed a duty to the plaintiff to

7     provide equal protection under the laws.

8  147. The defendants owed a duty to the plaintiff to

9     follow the rules of criminal procedure and the

10    Montana and US Constitution, having made an oath to

11    support and defend the same.

12  148. The defendants engaged in prosecuting the

13    plaintiff in a court that was not the correct

14    venue, even after being notified of the issue, the

15    defendants brought more frivolous charges against

16    the plaintiff, instead of dismissing those charges.

17  149. The defendants owed a duty to the plaintiff to

18    investigate allegations of police misconduct and

19    for supervisor contact regarding complaints about

20    law enforcement response.

21

1   150.   The defendants owed a duty to the plaintiff to

2       provide accurate information to the courts.

3   151.   The defendants breached that duty of care.

4   152.   The defendants' actions were the proximate

5       cause of the harm to the plaintiff.

6   153.   The plaintiff suffered damages as a result in

7       having to defend allegations brought in an improper

8       venue and against charges that were brought without

9       probable cause.

10  154.   The plaintiff has suffered reputation,

11      emotional and economic damages.

12

13  CLAIM VIII - INTENTIONAL INFLICTION OF EMOTIONAL

14                      DISTRESS

15  155.   The defendants' conduct was extreme and

16      outrageous;

17  156.   The defendants acted intentionally and

18      recklessly;

19  157.   The plaintiff suffered severe emotional

20      distress; and

21

1   158.   The defendants' conduct was the proximate cause

2       of   the   emotional   distress   suffered   by   the

3       plaintiff.

4

5               CLAIM IX - FALSE IMPRISIONMENT

6   159.   The defendants deprived the plaintiff of his

7       liberty   by   bringing   charges   that   could   not   be

8       brought   in   this   jurisdiction   and   venue,   were

9       brought   without   probable   cause   and   deprived   the

10      plaintiff of his liberty by denying him the ability

11      to travel freely, to be free from court obligations

12      and   to   be   free   from   the   social   and   financial

13      burdens placed upon the accused if criminal charges

14      are brought.

15  160.   The deprivation of liberty was done without the

16      plaintiff's consent.

17  161.   The   deprivation   was   done   without   legal

18      justification.

19

20

21

VERIFIED COMPLAINT and DEMAND FOR JURY TRIAL - 40

1    ## CLAIM X - UNLAWFUL ARREST AND DETENTION

2    162.   The   defendants   deprived   the   plaintiff   of

3    federally   protected   rights,   privileges,   and

4    immunities;

5    163.   The defendants took action under the color of

6    state law.

7

8    ## CLAIM XI – USCA §1983 VIOLATION

9    164.   Deprivation   of   a   federally   protected   right,

10   privilege, or immunity.

11   165.   Action by the defendant under color of state

12   law.

13

14   ## CLAIM XII - INTENTIONAL INTERFERENCE WITH A PROSPECTIVE

15   ## BUSINESS ADVANTAGE

16   166.   The   defendants   were   aware   of,   and   actually

17   interfered   with,   the   plaintiff's   existing   or

18   reasonable   exptected   relationship   with   a   third

19   party, relationships which were likely to provide

20   future economic benefits to the plaintiff.

21

167.   The defendants intended to interfere and acted with the sole purpose of harming the plaintiff, and the defendants employed wrongful methods in effecting the interference.

168.   The defendants' interfering conduct was not justified or privileged.

169.   The plaintiff suffered actual damages that, but for the defendants' interference, would not have occurred.

170.   The plaintiff suffered punitive damages and attorney's fees.


CLAIM XIII - OUTRAGE

171.   The defendants conduct was so extreme and outrageous that the plaintiff is entitled to recovery.

172.   The emotional distress suffered by the plaintiff is in such extreme degree that the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it.

VERIFIED COMPLAINT and DEMAND FOR JURY TRIAL - 42

1

## CLAIM XIV – FALSE LIGHT INVASION OF PRIVACY

2  173.   The   defendants   engaged   in   a   search   of

3     plaintiff's business, without probable cause, took

4     all of the major tools used by his business and his

5     15+ employees, held them for two months, and then

6     would not release it without the plaintiff's having

7     to petition the court and obtain court orders.

8  174.   On  the  way  to  the  plaintiff's business,  the

9     defendants contacted the Missoulian and the entire

10     search  was  captured  on  TV  and  in  the  newspaper,

11     because reporters showed up.

12  175.   There were no charges filed, but the publicity

13     generated  caused  a  drop  in  plaintiff's  business

14     because it harmed his credibility.

15

16     ## CLAIM XV – SEARCH AND SEIZURE VIOLATIONS

17  176.   The plaintiff had the right to be secure in his

18     person, places, and effects according the 4th, 5th,

19     6th, and 14th Amendments to the US Constitution.

20  177.   The   defendants   repeatedly   violated   the

21     plaintiff's right to privacy when they conducted a

VERIFIED COMPLAINT and DEMAND FOR JURY TRIAL - 43

1    search at plaintiff's business, obtaining 30,000

2    patient medical records and database information,

3    in violation of HIPPA. The records were not

4    included in the search warrant because it would

5    have been unlawful for any Court to order their

6    disclosure.

7    178. The harm to plaintiff's business because his

8    patients could no longer be certain that their

9    medical history would remain confidential can

10   hardly be measured.

11   179. The harm to the plaintiff's clients and

12   patients, and to the reputation of the plaintiff

13   with his doctors cannot be measured. The police

14   took patient medical records without a search

15   warrant, outside of the law, illegally, and then

16   used it to conduct raids and searches on those

17   patients.

18   180. The defendants continued to violate the

19   plaintiff's rights to privacy when the defendants

20   searched and seized his account information at his

21   cell phone carrier, without a warrant. Nor was the

VERIFIED COMPLAINT and DEMAND FOR JURY TRIAL - 44

1      item seized in plain view, it was private and held

2      behind firewalls and highend technical barriers.

3      Nor was the item mentioned in the return, nor was

4      the item obtained by any other party, lawfully.

5      181. The State Court refuses to suppress this

6      illegally obtained evidence, and the Appellate

7      Court has refused to grant the plaintiff a writ of

8      supervisory control.

9      182. The plaintiff cannot exhaust any more remedies,

10      he has filed over 1,300 pleadings in the 25 civil

11      and 1 criminal case in which he is involved. Not

12      one of his pleadings or causes have been deemed

13      frivilous in the 3 years he has been litigating.

14      Even after filing multiple motions for

15      reconsideration, because the court is proceeding

16      under plain error, the lower State Courts continue

17      to refuse to reverse their orders, depriving the

18      plaintiff of due process, equal access to the

19      courts and the general deprivation of his civil

20      rights in violation of §1983, U.S.C.

21

WHEREFORE,

Plaintiff demands a trial by jury, injunctive relief in form of stay of proceedings in the State Court, pending this Federal action and that the court finds judgment against the defendants as follows:

1. Damages from time lost in pursuing this action to make the plaintiff whole, as the plaintiff is pro se and entitled to be compensated for time spent in the amount of $26,850.00;

2. Damages from the lost business from industry relationships in the amount of $1,568,000.00;

3. Damages from having to hire legal counsel to defend himself in the underlying frivolous lawsuits in the amount of $34,000.00;

4. Punitive damages in the amount of $50,000,000.00, for defendants' willful and malicious actions in misusing and perverting process, for it's intentional infliction of emotional distress and for punitive damages for the other claims.

VERIFIED COMPLAINT and DEMAND FOR JURY TRIAL - 46

1   5. Costs of the suit to be taxed to Defendants;

2   6. Interest to the date of the payment at the lawfully

3      allowable percentage rate per annum; and,

4   7. Such  other  and  further  relief  as  the  court

5      considers just and proper.

6

7           Dated this 20th day of June, 2012.

8                  :

9                                  Jason Christ, Pro Se

10

11

12

13

14

15

16

17

18

19

20

21

1

## **VERIFICATION**

2

3  State of Montana        )

                           ) ss.
4
   County of Missoula      )
5

6  I, Jason Christ, after being first duly sworn on oath

7  do depose and say: that I am the Jason Christ, referred
   to this foregoing Verified Complaint, that I have read
8  the foregoing, know the contents thereof, and that the

9  facts and matters therein contained are true, accurate

10 and complete. I further declare under penalty of
   perjury that I am the plaintiff in this action, I have
11 read this complaint, and the informationi set forth

12 herein is true and correct. (28 U.S.C. §1746; 18 U.S.C.
   §1621.)
13

14

15                                          JASON CHRIST

16

17

18 SWORN to and subscribed before me, this the 20th day of
   June, 2012.
19

20

21                                          NOTARY PUBLIC

   VERIFIED COMPLAINT and DEMAND FOR JURY TRIAL - 48

1

2

3                                        My Commission Expires:

4

5

6

7

8                                                                    :

9

10

11

12

13

14

15

16

17

18

19

20

21

VERIFIED COMPLAINT and DEMAND FOR JURY TRIAL - 49